**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| JOANN INC., *et al.*, | Case No. 25-10068 (CTG) |
| Wind-Down Debtors. | (Jointly Administered) |
| JOANN INC., *et al.*, | Adv. Proc. No. 25-51022 (CTG) |
| Plaintiffs, | **Related Docket Nos. 26, 29, & 31** |
| v. | |
| ADVANTUS CORP., *et al.*, | |
| Defendants. | |
| ADVANTUS CORP, *et al.*, | Adv. Proc. No. 25-52463 (CTG) |
| Plaintiffs, | **Related Docket No. 6** |
| v. | |
| MICHAEL PRENDERGAST, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Joann was an iconic national fabric and hobby retailer, with hundreds of stores across the country.[1]  The company filed for bankruptcy in January 2025, less than nine months after it had successfully emerged from a brief and fully consensual prepackaged bankruptcy case in 2024 in which the company had restructured its balance sheet but left its business operations largely intact.  In the second bankruptcy

---

[1] *See In re Joann Inc.*, No. 25-10068, D.I. 5 ¶ 6 (Bankr. D. Del. Jan. 15, 2025).  Debtor JOANN Inc. along with its affiliated debtors, is referred to as "Joann."

case, the company sold its assets to a liquidator, which proceeded to liquidate the business.

In May 2025, a number of the company's prepetition creditors, vendors who had supplied goods after the first bankruptcy case but before the second, filed suit in the Court of Common Pleas of Summit County, Ohio. They named various former officers of Joann as defendants. The theory of the case is that the former officers made false statements that induced the vendors to extend credit to Joann. Their state court complaint thus asserts claims sounding in negligent misrepresentation and common law fraud.[2]

As a result, two separate matters have now landed before this Court. *First*, the Wind-Down Debtors – the post-confirmation entities that emerged from the second bankruptcy case – have sued the vendors, seeking a declaration that their state court action asserts what is actually an estate claim that was sold to the liquidator in the sale, and is thus barred by this Court's order approving the sale.

*Second*, the former officers removed the state court action to the U.S. District Court for the Northern District of Ohio on the ground that it fell within the federal court's bankruptcy jurisdiction. That court then transferred the lawsuit to the district court in Delaware, which has referred it to this Court. The vendors argue that this Court should remand it back to the Ohio state court, both for want of subject-

---

[2] The Ohio state court complaint is an exhibit to the Notice of Removal originally filed in the District Court for the District of Ohio, and subsequently transferred to the District Court for the District of Delaware. *See Advantus Corp., et al. v. Prendergast, et al.*, No. 1:25-cv-01132, D.I. 1-1 (D. Del. June 16, 2025).

matter jurisdiction and on equitable remand grounds.  Alternatively, the vendors ask that this Court abstain from the case, both on mandatory and permissive abstention grounds.

On the question whether the vendors' claim against the former officers is barred by the sale order, the Court first addresses the question whether the Wind-Down Debtors have standing to advance that argument.  While this question is an arguable one, the Court concludes that they do.

Analysis of the merits of that issue requires the Court to take into account the Third Circuit's recent decision in *Whittaker Clark & Daniels*.[3]  While that case may have expanded the scope of the kinds of claims that are estate property under § 541 of the Bankruptcy Code, even under that standard the vendors' claims here are not the estate's property.  The vendors' claims all require a showing that each vendor relied on a false statement by each defendant.  As such, those are still individual rather than derivative claims and never became property of the estate.  The vendors' assertion of those claims is therefore not precluded by this Court's order approving the sale of Joann's assets.

With respect to the various questions about jurisdiction, remand, and abstention, the Court concludes that it has subject-matter jurisdiction over the suit removed to the Ohio district court and transferred to Delaware.  The action is not subject to mandatory abstention.  And, as an exercise of discretion, the Court will

---

[3] *See In re Whittaker Clark & Daniels Inc,* No. 24-2210, 2026 WL 1131929 (3d Cir. Apr. 27, 2026).

deny the motion to abstain on permissive grounds and the motion to remand based on equitable considerations.

## Factual and Procedural Background

Joann was a national retailer of crafts and home decor products.[4]  It's first bankruptcy case in this Court, a fully consensual prepackaged case, was filed in March 2024.[5]  The Court entered an order confirming that plan in April 2024, and the plan became effective a few days later.[6]

Joann filed for bankruptcy again in January 2025.[7]  In that second case, this Court approved a sale of substantially all of the debtors' assets to a buyer, a

---

[4] EA D.I. 24 ¶ 7.  This Memorandum Opinion is intended to address the outstanding motions in both (a) the adversary proceeding brought by the Wind-Down Debtors seeking to enforce the sale order; and (b) the action brought by the vendors in Ohio state court that was removed to federal court and transferred here.  The Court will refer to the first of those cases, *Joann Inc., et al. v. Advantus Corp., et al.*, No. 25-51022, as the "Enforcement Action."  Items filed on the Enforcement Action docket are cited as "EA D.I. __."  The Court will refer to the second case, *Advantus Corp., et al. v. Prendergast, et al.*, No. 25-52463 as the "Removed Action."  Items filed on the Removed Action docket are cited as "RA D.I. __."

[5] *Joann Inc.*, No. 24-10418, D.I. 1 (petition).

[6] *Joann Inc.*, No. 24-10418, D.I. 303 (confirmation order), D.I. 318 (notice of occurrence of effective date).

[7] EA D.I. 24 ¶ 14.  For purposes of the Wind-Down Debtors' motion for judgment on the pleadings, the Court considers those facts alleged in the complaint and admitted in the answer.  *See* Fed. R. Civ. P. 12(c) (as made applicable hereto by Fed. R. Bankr. P. 7052); *In re Promise Healthcare Group, LLC*, No. 23-50335, 2024 WL 1925902, at *5 (Bankr. D. Del. May 1, 2024).

4

liquidator.[8] This Court confirmed a plan in the second *Joann* bankruptcy case in July 2025, which became effective less than a week later.[9]

Meanwhile, in May 2025, certain of Joann's vendors filed an action in the Court of Common Pleas in Summit County, Ohio.[10] The vendors named, as defendants, various former officers of Joann.[11] The basic theory of the complaint is that after the first but before the second *Joann* bankruptcy case, the former officers made various false and misleading statements about Joann's financial condition that induced the vendors to provide goods on credit.[12] The complaint accordingly asserts claims for common law fraud and negligent misrepresentation.

This set of events gave rise to the two adversary proceedings that are now before this Court. *First*, in June 2025, the debtors (before the plan was confirmed) sued the vendors, arguing that the claims asserted in the Ohio state court action were actually estate causes of action, not direct claims belonging to the vendors. As a

---

[8] D.I. 520. The buyer, a joint venture between GA Joann Retail Partnership LLC and Wilmington Savings Fund Society, FSB, in its capacity as Prepetition Term Loan Agent, is referred to as the "Joann Buyer." The Court refers to the order approving that transaction, which the parties at times describe (for complicated reasons that are not relevant here) as an "agency agreement," as the "sale order."

[9] *Joann Inc.*, No. 25-10068, D.I. 1387 (confirmation order); D.I. 1416 (notice of occurrence of effective date).

[10] EA D.I. 24 ¶ 19. The plaintiffs in that lawsuit, Advantus, Corp., Fairfield Processing Corp., Gwen Studios, LLC, Low Tech Toy Club, LLC, Ormo Ithalat Ihracat A.S., and Springs Creative Products Group, LLC, are referred to as the "vendors."

[11] The defendants in the Ohio state court lawsuit, Michael Prendergast, Jeffrey Dwyer, Robert Will, Christopher DiTullio, Heather Holody, Michael Kennedy, and Melissa Bowers, are referred to as the "former officers."

[12] EA D.I. 24-2 (Ohio state court complaint).

result, the debtors argued that those claims could only be asserted by the Joann Buyer, not the vendors.[13]

The debtors – now the Wind-Down Debtors after the Joann plan had become effective – amended the complaint in August 2025.[14] After the vendors answered the complaint, the Wind-Down Debtors moved for judgment on the pleadings.[15] Thereafter, certain of the former officers filed a joinder in the motion for judgment on the pleadings.[16] The vendors then moved to dismiss the lawsuit for lack of subject-matter jurisdiction and to strike the joinder filed by certain of the former officers.[17] All of these motions are now fully briefed and ripe for decision.

*Second*, a few days after the debtors initiated the Enforcement Action, the former officers removed the Ohio state court lawsuit to the United States District Court for the Northern District of Ohio, on the ground that it was within the district court's "related to" jurisdiction set forth under 28 U.S.C. § 1334(b).[18] That court granted the former officers' motion to transfer the case to the U.S. District Court for the District of Delaware.[19] The district court then referred the case to this Court.[20]

---

[13] EA D.I. 1.

[14] EA D.I. 24 (amended complaint).

[15] EA D.I. 25 (answer); EA D.I. 26 (motion for judgment on the pleadings).

[16] EA D.I. 28.

[17] EA D.I. 29 (motion to dismiss); EA D.I. 31 (motion to strike).

[18] *Advantus Corp. v. Prendergast*, No. 5:25-cv-01250, D.I. 1 (N.D. Ohio June 16, 2025).

[19] *Id.*, D.I. 25.

[20] *Advantus Corp. v. Prendergast,* No. 1:25-cv-01132, D.I. 43.

The vendors have moved to remand this suit back to the Ohio state court on the ground that this Court lacks subject-matter jurisdiction and have moved for this Court to abstain from hearing it.[21]  The former officers have moved to stay any consideration of the Removed Action pending the Court's resolution of the Enforcement Action.[22]  These motions are also fully briefed and ripe for decision.  The Court heard argument on all of these motions on April 6, 2026.

## Jurisdiction

The Enforcement Action is brought as an action to enforce this Court's order approving the sale.  As an action to enforce the Court's prior order, it would typically be within the subject-matter jurisdiction under the principle, set forth by the Supreme Court in *Travelers* and by the Third Circuit in *Essar Steel,* that a federal court always has subject-matter jurisdiction over a claimed violation of the court's prior order.[23]  The analysis here is not as simple as that, however, as that principle presumes that the plaintiff has a sufficiently concrete stake in the matter that it has constitutional standing to bring it.  The law is clear that having a plaintiff with standing is a jurisdictional requirement.  And here, the vendors argue that the Wind-Down Debtors lack the kind of stake in the enforcement of the sale order to have

---

[21] RA D.I. 6 (remand motion); *Advantus Corp. v. Prendergast*, 1:25-cv-01132, D.I. 21 (abstention motion).

[22] *Advantus Corp. v. Prendergast,* No. 1:25-cv-01132, D.I. 34 (stay motion).

[23] *See Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009); *In re Essar Steel Minnesota, LLC*, 47 F.4th 193, 201 (3d Cir. 2022).  *See also In re SunPower Corp.*, No. 24-11649, 2026 WL 1599285, at *7-8 (Bankr. D. Del. June 3, 2026).

standing to bring the action. In Part I of this Memorandum Opinion, the Court concludes that the Wind-Down Debtors do have standing to enforce the sale order.

In addition, the vendors argue that this Court lacks subject-matter jurisdiction over the Removed Action. For the reasons described below in Part III.A, however, this Court does have jurisdiction over the Removed Action as one that falls within the related-to jurisdiction set forth in 28 U.S.C. § 1334(b).

## Analysis

### I. The Wind-Down Debtors have standing to bring the Enforcement Action.

As the Supreme Court explained earlier this Term in its decision in *Bost*, every plaintiff in a lawsuit brought in federal court is required to "first answer a basic question" that Justice Scalia posed in a 1983 law review article: "What's it to you?"[24] "For a plaintiff to get in the federal courthouse door and obtain a judicial determination of what the governing law is, the plaintiff cannot be a mere bystander, but instead must have a 'personal stake' in the dispute."[25]

The vendors argue that the Wind-Down Debtors are effectively bystanders here. If this Court's order approving the sale of Joann's assets to the Joann Buyer precludes the vendors from pursuing the Removed Action, the most obvious beneficiaries are the former officers. But while those former officers have filed a "joinder" in the motion for judgment on the pleadings, they have not sought to

---

[24] *Bost v. Illinois State Board of Elections*, 607 U.S. 71, 76 (quoting A. Scalia, The Doctrine of Standing as an Essential Element of the Separation of Powers, 17 Suffolk U. L. Rev. 881, 882 (1983)). *See also FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 379 (2024).

[25] *Id.*

8

intervene and therefore are not plaintiffs in the lawsuit.  Alternatively, perhaps the Joann Buyer, who on the Wind-Down Debtors' theory would hold any claim that may exist against the former officers, would have standing to enforce the sale order.  The Joann Buyer, however, has not sought to participate in this action.  So why do the Wind-Down Debtors have standing?

This Court views that question as an arguable one.  As will be further described in Part I.A.2, the Court ultimately concludes that the allegations of injury to the Wind-Down Debtors are sufficient to clear the hurdle of standing.  But before explaining the reasons for that determination, the Court must first address the Wind-Down Debtors' arguments that the requirements of standing are inapplicable because this Court is not an Article III court.

**A.     The Wind-Down Debtors have a sufficiently concrete stake in the enforcement of the sale order to give rise to constitutional standing.**

**1.     A plaintiff in an adversary proceeding in bankruptcy must have constitutional standing.**

While the argument does not appear to be included in their briefing, at oral argument the Wind-Down Debtors argued that the question of their standing to assert the lawsuit need not be considered, on the theory that standing is a requirement reflected in Article III of the Constitution, and therefore need not be established in order for this action to proceed in this Court, which is a non-Article III Court.[26]

---

[26] *See* Apr. 6, 2026 Hr'g Tr. at 19 ("the better position that Article III three standing requirements don't apply in Bankruptcy Courts, as the Fourth and Fifth Circuits have held"); *Kiviti v. Bhatt*, 80 F.4th 520, 533 (4th Cir. 2023) ("Once a case is validly referred to the

9

That argument rests on the Fourth Circuit's recent decision in *Kiviti*. But even if *Kiviti* were controlling, it would do little to help the Wind-Down Debtors here. *Kiviti* did not hold that Article III standing requirements are entirely inapplicable in bankruptcy. Recognizing that as a statutory matter a bankruptcy court can only exercise the jurisdiction that is referred to it by a district court, and that a district court cannot exercise jurisdiction if Article III standing is absent, *Kiviti* accepts that without Article III standing at the time a case is filed, there is no "case" or "controversy" that may be referred by the district court to the bankruptcy court.

*Kiviti* accordingly addresses only a narrower question – whether a bankruptcy court must dismiss a case as moot in circumstances in which a district court would be required to do so. It holds that a bankruptcy court need not dismiss a case that is constitutionally moot. As this Court noted in passing in its decision in *Avon*, it continues to believe, for the reasons the Tenth Circuit Bankruptcy Appellate Panel explained in *In re Pettine*, that this holding of *Kiviti* was erroneous.[27] The district court's authority to supervise the conduct of the bankruptcy court either through an appeal or by withdrawing the reference at any time is an important feature that is necessary for the bankruptcy jurisdictional scheme devised by Congress to itself

---

bankruptcy court, the Constitution does not require it be an Article III case or controversy for the bankruptcy court to act."); *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018) ("Bankruptcy courts are not Article III creatures bound by traditional standing requirements.").

[27] *See In re AIO US, Inc.*, 672 B.R. 261, 268 n.19 (Bankr. D. Del. 2025) (citing *In re Pettine*, 655 B.R. 196, 206-212 (B.A.P. 10th Cir. 2023)). While the lead debtor in this case was AIO US, Inc., the parties colloquially referred to the case as "Avon," which is the brand by which the debtors' products were known. This Court will follow that convention.

comport with Article III.[28] And as *Pettine* persuasively explained, permitting a bankruptcy court to hear a case that could not be reviewed by the district court is inconsistent with that statutory design.[29]

In any event, however, the Wind-Down Debtors have identified no authority suggesting that a plaintiff may pursue an adversary proceeding in a bankruptcy court if that plaintiff lacked a sufficiently concrete stake to file that case in a district court. The Court accordingly rejects the Wind-Down Debtors' contention that it may address the merits of this action without a satisfactory answer to Justice Scalia's question – what's it to the Wind-Down Debtors?

> **2.     The allegations in the complaint are sufficient to establish the Wind-Down Debtors' standing.**

While the Court views the question as a colorable one, the Court is satisfied that the Wind-Down Debtors have an adequate answer to that question. The Third Circuit explained in *Global Industrial Technologies* that the standing requirements

---

[28] *See generally Stern v. Marshall*, 564 U.S. 462 (2011).

[29] The Wind-Down Debtors and the Fourth Circuit opinion in *Kiviti* also point to the Fifth Circuit decision in *Technicool Systems* as standing for the proposition that a bankruptcy court may hear a dispute despite the absence of standing. But *Technicool* on its facts had nothing to do with standing in bankruptcy court. It was addressing the requirement of a party's standing to bring an appeal in the district court from the bankruptcy court's ruling. So while the case says that "[b]ankruptcy courts are not Article III creatures bound by traditional standing requirements," 896 F.3d at 385, it is a vast overreading of that language to suggest that the Fifth Circuit held that an adversary proceeding could go forward in bankruptcy court in a case in which the plaintiff lacked standing. The case to which *Technicool Systems* points as authority is *Rohm & Haas Texas, Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205 (5th Cir. 1994). But that was not even a bankruptcy case. In addressing the statutory standard required to bring a bankruptcy appeal, it commented in a footnote that "Article III is inapplicable to bankruptcy courts." *Id.* at 210 n.18. Nothing in that opinion, however, suggests either that (a) a district court could refer a case to the bankruptcy court if the district court lacked Article III standing or (b) Congress would have intended to permit bankruptcy courts to hear cases in the absence of such standing.

11

are "very generous" and that an "identifiable trifle" of injury – perhaps analogous to the "peppercorn" of consideration necessary to establish the formation of a contract – will suffice to support standing.[30]

Here, the Wind-Down Debtors point to three specific ways in which the pursuit of the claims in the Removed Action injure them. *First*, they argue that their role under the terms of the confirmed plan is to administer the orderly liquidation of claims against the estate, and that the vendors' pursuit of their claims against the former officers interferes with those efforts. The basis for this claim is that the former officers, in defending against the vendors' claims, may exhaust director and officers' insurance that would otherwise be available to the Wind-Down Debtors or may assert indemnity claims for which the Wind-Down Debtors would be liable.[31]

*Second*, they point to the language of the sale order, which authorizes them to take all appropriate actions to enforce the terms of the sale order. And *third,* they note that the vendors dispute the former officers' standing to enforce the sale order and argue that *someone* must have standing to do so. The Wind-Down Debtors, they insist, are left as the logical parties to enforce it.

Neither the second nor the third theory is sufficient, since neither points to a specific, concrete form of harm to the Wind-Down Debtors.[32]   The Wind-Down

---

[30] *In re Global Indus. Tech., Inc.*, 645 F.3d 201 (3d Cir. 2011) (*en banc*). *See also Delta Health Grp., Inc. v. Royal Surplus Lines Ins. Co.,* 327 F. App'x 860, 866 (11th Cir. 2009) ("Consideration is only required to rise to the level of a peppercorn.").

[31] Apr. 6, 2026 Hr'g Tr. at 24.

[32] *See Alliance for Hippocratic Medicine*, 602 U.S. at 396 ("But even if no one would have standing, this Court has long rejected that kind of 'if not us, who?' argument as a basis for standing.").

Debtors' first argument, however, is sufficient to establish standing.  To the extent that the pursuit of the vendors' claims against the former officers could potentially consume insurance that would otherwise be available to the Wind-Down Debtors or give rise to indemnity obligations that would increase the claims asserted against them, that would appear to be sufficient injury to give rise to an Article III case or controversy.

The vendors also argue that the Wind-Down Debtors lack prudential standing to enforce the sale order.  The Third Circuit explained in *Wilton Armetale*, however, that the principles that were once described as "prudential standing" no longer remain a basis for a court to dismiss a complaint for want of standing.[33]  The Court will accordingly deny the motion to dismiss the adversary proceeding for lack of standing.[34]

### B.    The former officers' joinder will be treated as an *amicus* brief; as such, it does not affect the standing analysis.

A side note on the issue of standing is the "joinder" in the motion for judgment on the pleadings filed by the former officers and the vendors' motion to "strike" that

---

[33] *See In re Wilton Armetale, Inc.*, 968 F.3d 273, 281 (3d Cir. 2020) (principles of prudential standing simply "go to the merits" and "do not affect our constitutional jurisdiction." *See also AIO*, 672 B.R. at 272-273.

[34] A case could be made that it is insufficient for the Wind-Down Debtors to have first asserted these bases for standing at oral argument, rather than including them in the complaint. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation").  In the interest of the efficient disposition of this dispute, however, the Court has determined to treat these allegations as sufficient, rather than require the Wind-Down Debtors to amend their complaint to include these allegations more clearly and thereby delay the disposition of the matter.

joinder.[35]  By way of background, in the context of an objection to the allowance of a proof of claim, this Court has held that filing a "joinder" in another party's claim objection was tantamount to filing an independent objection.[36]  The reasoning there was that there was little point in requiring a party that wants to raise the same objection as another to copy and paste that party's pleading.  A "joinder" that operated to incorporate the other party's objection by reference ought to be able to accomplish the same thing without creating unnecessary busywork.

But a claims allowance dispute is a "contested matter" and proceeds under rules that are less formal than those applicable to adversary proceedings.  An adversary proceeding is governed by procedural rules that largely mirror regular civil litigation in a federal district court.  And in an ordinary civil lawsuit, specific rules govern who is a party to the case.  Civil Rule 24, made applicable to adversary proceedings by Bankruptcy Rule 7024, sets forth a specific process, and identifies the relevant criteria, for a party to intervene as a plaintiff or a defendant.

Unlike a contested matter, the Enforcement Action is an adversary proceeding to which Rule 7024 applies.[37]  And whatever one might make of the "joinder" filed by the former officers, it is not a motion that purports to make the kind of showing contemplated by Rule 7024 to permit the former officers formally to intervene in the Enforcement Action as plaintiffs.

---

[35] EA D.I. 28 (joinder); EA D.I. 31 (motion to strike).

[36] *In re Yellow Corp.*, 670 B.R. 397, 405 (Bankr. D. Del. 2025).

[37] Bankruptcy Rule 7024 is not among the list of rules that are made applicable, under Bankruptcy Rule 9014(c), to contested matters.  So the filing of a "joinder" in the context of a contested matter does not raise the same issues as those presented here.

14

So what, then, to make of the "joinder"?  At the April 6 hearing, counsel for the former officers who filed the joinder argued that, under the broad right to appear and be heard in a chapter 11 case set forth in § 1109(b) of the Bankruptcy Code, the joinder merely operates to permit a party-in-interest to argue for the same relief being sought by another party.[38]  Importantly, they acknowledged that allowing their joinder would not make them formal parties to the lawsuit and so would not affect the question of standing.  As counsel for the former officers put it, "if there is a problem with the [Wind-Down Debtor's] standing, I can't solve it."[39]

In substance, then, the former officers are essentially asking for the right to participate as *amici curiae*.  They would like the opportunity to offer their perspective on why the Wind-Down Debtors are entitled to the relief they seek.  But the Court need only consider their points to the extent the Court finds them helpful.  While the vendors continue to oppose even that degree of participation, the law is well settled that trial courts, which typically do not have formal rules expressly governing *amicus* participation, generally have discretion to permit it.[40]  Because that is, in substance, all that the joinder seeks to accomplish, the Court sees little harm or prejudice in considering the joinder for that purpose, whether or not the former officers are correct

---

[38] Apr. 6, 2026 Hr'g Tr. at 70 ("[T]he joinder doesn't make me a party to this case. What the joinder does is simply exercise my right under [section] 1109 to say this bankruptcy case is under the auspices of another person's control … and I have a perspective and you may hear it.").

[39] *Id.* at 71.

[40] *See Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136-138 (D.D.C. 2008).

in their assertion that § 1109(b) entitles them to that degree of participation. The motion to strike will therefore be denied.

## II.   On the merits, the sale order does not bar the vendors' suit against the former officers.

Those conclusions accordingly tee up the merits of the Wind-Down Debtors' motion for judgment on the pleadings. And while the Third Circuit's decision in *Whittaker Clark & Daniels* did (at least on this Court's reading) expand the universe of claims that become property of the estate from prior law, that expansion does nothing to help the Wind-Down Debtors. Even under the broader formulation adopted in *Whittaker Clark & Daniels*, the vendors' claims are still direct claims that belong to them, not claims that became property of the Joann bankruptcy estate.

This Court has twice before addressed arguments that claims being asserted by creditors against third parties were in fact property of the bankruptcy estate and therefore could not be asserted by the plaintiffs. In both *TPC* and *First Guaranty Mortgage*, this Court addressed claims of that nature and resolved them by applying what it understood to be the then-applicable Third Circuit framework. That analysis was reasonably straightforward. Section 541(a) of the Bankruptcy Code provides that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[41] An affirmative cause of action seeking to recover money is undoubtedly "property." And it is well settled that a

---

[41] 11 U.S.C. § 541(a)(1).

16

debtor's interest in property is determined by applicable non-bankruptcy law, typically state law.[42]

It therefore follows that one determines whether a particular action is property of the debtor's bankruptcy estate by asking whether the debtor could have asserted that claim immediately before the bankruptcy filing under whatever law applies to that claim. If so, the claim is property of the estate and thus within the exclusive control of the trustee in bankruptcy. Indeed, the assertion of that claim by any other person would be an effort to exercise control over property of the estate, and thus a violation of the automatic stay.[43]

To be sure, claims for veil piercing or alter ego might raise complicated questions. Outside of bankruptcy, if Parent Corporation dominated and controlled the actions of Subsidiary Corporation, it is commonplace for creditors of Subsidiary Corporation to sue Parent Corporation, arguing that Parent Corporation is the "alter ego" of Subsidiary Corporation and therefore liable for Subsidiary Corporation's debt. Unsurprisingly, Subsidiary Corporation (almost by definition) is highly unlikely to sue Parent Corporation on that claim.[44] So there are not many state court decisions that are terribly helpful in answering whether that is a claim that could also be

---

[42] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[43] 11 U.S.C. § 362(a)(3) (the bankruptcy filing "operates as a stay … of … (3) any act to … exercise control over property of the estate").

[44] *See In re Emoral, Inc.*, 740 F.3d 875, 881 (3d Cir. 2014) ("As a practical matter, it is difficult to imagine a factual scenario in which a solvent Emoral, outside of the bankruptcy context, would or could bring a claim for successor liability against Aaroma."); *Whittaker Clark & Daniels*, 2026 WL 1131929 at *12 n.17. ("as a practical matter, the debtor corporation is unlikely to assert those claims against a controlling entity").

asserted by Subsidiary Corporation (and would thus become property of the Subsidiary Corporation's estate in the event of its bankruptcy). The issue does, however, regularly arise in the bankruptcy context.

The Third Circuit addressed this set of issues in cases such as *Foodtown* and *Emoral*.[45] This Court understood those opinions to focus on the issue whether under applicable non-bankruptcy law the claims could be asserted by the debtor immediately before the case. A key part of that analysis was whether the successful prosecution of the claim would benefit *all* creditors. If so, the claim was viewed as belonging to the company, with the creditors benefiting only "derivatively". Alternatively, if the successful prosecution of the claims would benefit only a subset of the creditor body, the claim was likely held "directly" by that subset of creditors, not by the company.[46]

The Third Circuit's decision in *Whittaker Clark & Daniels* either altered this analysis or, at the very least, suggests that this Court's understanding of that doctrine failed to appreciate some of the more subtle nuances. Because any "change"

---

[45] *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002); *Emoral*, 740 F.3d at 882.

[46] *Foodtown*, 296 F.3d at 170 ("In order for the claim to be the legal or equitable interest of the debtor in property, the claim must be a general one, with no particularized injury arising from it…. On the other hand, if the claim is specific to the creditor, it is a personal one and is a legal or equitable interest only of the creditor. A claim for an injury is personal to the creditor if other creditors generally have no interest in that claim.") (internal citations and quotations omitted); *Emoral*, 740 F.3d at 880 ("The Diacetyl Plaintiffs fail to demonstrate how any of the factual allegations that would establish their cause of action based on successor liability are unique to them as compared to other creditors of Emoral. Likewise, they fail to demonstrate how recovery on their successor liability cause of action would not benefit all creditors of Emoral given that Aaroma, as a mere continuation of Emoral, would succeed to all of Emoral's liabilities. Thus, the Diacetyl Plaintiffs' cause of action against Aaroma is general rather than individualized.") (internal quotations omitted).

18

in existing doctrine occasioned by the *Whittaker Clark & Daniels* decision turns out not to make much difference to the resolution of the matter now before the Court, that "change" is addressed only in the margins.[47]

---

[47] *Whittaker Clark & Daniels* makes clear that "a claim may constitute property of the estate notwithstanding whether the debtor corporation was authorized to assert it outside of bankruptcy." 2026 WL 1131929, at *15. That conclusion at least arguably breaks with decisions of several other courts of appeals. *See generally Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987); *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010); *In re Icarus Holding, LLC*, 391 F.3d 1315 (11th Cir. 2004). The Third Circuit states that this result follows from its decisions in *Emoral* and *Wilton Armetale.* *Whittaker Clark & Daniels*, 2026 WL 1131929, at *15. *Emoral* does make the point that a company does not typically pierce its own veil. This Court had not appreciated, however, that this statement implied that the company's *right* to assert the claim under non-bankruptcy law was not dispositive of whether the claim was property of the estate.

That said, *Wilton Armetale* did indeed include language suggesting that a fraudulent conveyance claim was property of the estate under § 541. Such a claim, of course, could not be asserted by the debtor outside of bankruptcy, since the debtor itself is the party that made the transfer. Leading bankruptcy scholars have taken the view, consistent with the statutory text, that such a claim is controlled by the trustee by virtue of § 544 (which gives the trustee the power to assert certain claims that *creditors* would otherwise have to recover on their claims against the debtor), not § 541. *See* Douglas G. Baird, *The Elements of Bankruptcy* 118 (7th ed. 2022) ("The relationship between property of the estate under § 541 and the strong-arm powers of § 544 is one of the most important and least appreciated in all of bankruptcy law. The trustee enjoys the rights of the debtor under § 541. In addition, the trustee can assert the rights that creditors could assert against the debtor's property outside of bankruptcy under § 544. Too often lawyers focus exclusively on § 541 and forget that § 544 does much of the work."); Thomas H. Jackson, *The Logic and Limits of Bankruptcy Law* 68 ("Section 541 allows the trustee to step into the shoes of the debtor in gathering property of the estate, and the avoiding powers (suggestively located in nearby sections) augment that activity by giving the trustee certain other powers to bring assets into the estate.").

In *Wilton Armetale* itself, the fact that the court found that the fraudulent conveyance claim was controlled by the trustee under § 541 rather than § 544 was of relatively little consequence, since the court went on to say that the trustee's abandonment of the claims returned them to the creditors who held them before bankruptcy. *Wilton Armetale*, 968 F.3d. at 284-285. *See also Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 463 (2017) (indicating that upon the dismissal of a chapter 11 bankruptcy case, creditors would have the right "to assert the fraudulent-conveyance claim themselves"); *In re Interpictures Inc.,* 217 F.3d 74, 76 (2d Cir. 2000) ("[O]nce the debtor's property is abandoned in bankruptcy, the property should be treated as though no bankruptcy proceedings had occurred and therefore revert to the party that held a pre-petition interest in it."); *In re Oldco Tire Distr., Inc.,* 676 B.R. 310, 316 n.27 (Bankr. D. Del. 2025) (same).

The Third Circuit's opinion in *Whittaker Clark & Daniels* does set forth a clear test, and the task of this Court, of course, is to apply it. Specifically, *Whittaker Clark & Daniels* explains that the line between claims that belong to the debtor, and those that are held by creditors individually, is drawn as follows: "claims are personal to creditors when the theory of liability is based on a particularized injury directly traceable to the conduct of the defendant," while they are "property of the debtor's bankruptcy estate if the theory of liability is instead based on an injury to the debtor corporation that resulted in secondary harm to all creditors."[48]

Applying this rule to the claims asserted by the vendors against the former officers in the Removed Action is straightforward. Those are claims held by the vendors directly, not ones that became property of the Joann bankruptcy estate and were thus sold to the Joann Buyer during the bankruptcy case. The central allegation in the Removed Action is that former officers made false or inaccurate statements about Joann's financial condition *on which the vendors relied* in extending credit to Joann.

Here, under Ohio law, each of the claims asserted by the plaintiffs requires a showing that each plaintiff justifiably relied on the defendant's statements or omissions. The Supreme Court of Ohio made clear in *Burr v. Board of County*

---

*Whittaker Clark & Daniels*, however, follows this language from *Wilton Armetale* to its logical conclusion, which means that claims that were held only by creditors outside of bankruptcy become property of the bankruptcy estate under § 541. As noted above, however, even to the extent this conclusion expands "property of the estate" under § 541 from how it is more commonly understood, that expansion does not affect the resolution of the case at bar.

[48] *Whittaker Clark & Daniels*, 2026 WL 1131929, at *18.

20

*Comm'rs of Stark County* that an element of fraud is the "justifiable reliance upon the representation or concealment."[49]  Indeed, the District Court for the Northern District of Ohio, applying Ohio law, recently dismissed a fraud claim on the ground that the plaintiff failed adequately to allege reliance.[50]  For that reason, under the test set out in *Whittaker Clark & Daniels*, the theory of liability is necessarily based on a particularized injury directly traceable to the conduct of the defendant.  As a result, the claims are individual claims.

In response, the Wind-Down Debtors argue that essentially any creditor could make the same argument that the vendors who have filed the Removed Action have made.[51]  In support of that contention, the Wind-Down Debtors point to the fact that the complaint relies on the debtors' press release and vendor presentations, and therefore argue that the facts on which the complaint relies are "generally available to any creditor" as that expression is used in *Whittaker Clark & Daniels*.[52]

The key point, however, is that even if it were true that any creditor could allege that it individually relied on the former officers' representations (and in light of the requirements of Rule 11, it is far from clear that it is), to prevail on a claim for fraud or negligent misrepresentation, the creditor will need to *prove* that reliance to

---

[49] *Burr v. Board of County Comm'rs of Stark County*, 491 N.E. 2d 1101, 1105 (Ohio 1986).

[50] *Bibbs v. Allstate Ins. Co.*, No. 1:23-cv-1968, 2024 WL 4124171, at *10 (N.D. Ohio Sept. 9, 2024) ("there are no allegations concerning reliance as to the claims under Count III—a required element for a claim of promissory fraud").

[51] Apr. 6, 2026 Hr'g Tr. at 9 ("that is theory of liability that could be made by any creditor, certainly any trade … creditor").

[52] *Id.* (citing *Whittaker Clark & Daniels*, 2026 WL 1131929, at *14).

the satisfaction of the finder of fact.  For that reason, these claims are individual rather than general ones.

Finally, the Wind-Down Debtors argue that the kind of individual showing of reliance that the vendors must make in order to state claims is no different from the requirement of individual injury that the *Emoral* court found to be insufficient.  But that is incorrect.  In *Emoral*, the point was that while every creditor of course had its own claim, the theory of *liability* – a generalized theory of alter ego – applied equally to every creditor.  The critical difference here is that any creditor who cannot make an individual showing of reliance is unable to establish the former officers' liability. The conclusion that the claims are individual rather than estate claims is therefore entirely consistent with *Emoral*.  The Wind-Down Debtors' motion for judgment on the pleadings will accordingly be denied.

## III.   The Court will deny the motions to remand and to abstain.

Having concluded that the Removed Action is not barred by the order approving the sale of Joann's assets to the Joann Buyer, the question is whether that claim belongs before this Court.  To that end, the vendors argue that the case should be remanded because it is outside this Court's jurisdiction; that it is subject to mandatory abstention under 28 U.S.C. § 1334(c)(2); and that it is properly subject to either permissive abstention and/or equitable remand.  For the reasons set forth below, the Court rejects each of these arguments and will retain jurisdiction over the Removed Action.

22

**A.   Because this case was filed before the debtors emerged from bankruptcy, it is within the related-to jurisdiction of § 1334(b).**

The vendors have moved to remand this case back to Ohio state court on the ground that the action is outside the scope of the related-to jurisdiction. That argument was first presented to the District Court for the Northern District of Ohio, which rejected it, finding that the possibility that the debtors may be required to indemnify the defendants was sufficient for the case to fall within the "related to" jurisdiction.[53]  When the case was transferred to the District of Delaware (before it was referred to this Court), the vendors renewed that argument. The District Court similarly rejected it, and proceeded to refer the case, under 28 U.S.C. § 157(a) and the district court's standing order of reference, to this Court.[54]  The vendors advance the same argument here.

As an initial matter, the Court rejects the suggestion that this Court can simply defer to the determinations on subject-matter jurisdiction made by the two district courts to consider the issue.[55]  Countless cases explain that every federal court is obligated to assure itself of its subject-matter jurisdiction.[56]  And the Supreme Court decision in *Christianson* makes clear that the law of the case doctrine provides no exception to that obligation.

---

[53] *Advantus Corp. v. Prendergast*, No. 5:25-cv-01250, D.I. 25 at 2-4.

[54] *Advantus Corp. v. Prendergast*, No. 1:25-cv-01132, D.I. 43.

[55] *See generally Christianson v. Colt Indus. Op. Corp.*, 486 U.S. 800, 818 (1988).

[56] *See, e.g., Hartig Drug Company Inc. v. Senju Pharmaceutical Co. Ltd.*, 836 F.3d 261, 267 (3d Cir. 2016).

23

That said, on the merits, the Court is satisfied that subject-matter jurisdiction is proper here.  As an initial matter, it is settled law that subject-matter jurisdiction is typically based on the facts as they existed at the time the complaint was filed.[57] Because this case was filed before the effective date of the Joann plan, the scope of the 1334(b) "related to" jurisdiction is determined by reference to *Pacor*'s "conceivable effect" test, not the more restrictive test that applies to post-confirmation jurisdiction.[58]

Even when the question is viewed before confirmation, Third Circuit caselaw takes a restrictive view of the exercise of related-to jurisdiction based on the mere possibility of an indemnification claim by the third party against the bankruptcy estate.[59]  Here, however, the insurance policies, to which the Wind-Down Debtors pointed as their basis for standing to be heard in the Enforcement Action, make the effect on the estate far less speculative than in cases where some intervening lawsuit needed to be brought to show an effect on the estate.  There is no dispute that these policies, in which the debtors had an interest at the time the complaint was filed, were eroded through the defense of the Removed Action.  That is sufficient to

---

[57] *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570 (2004) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (internal quotation and citation omitted).

[58] *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984).  *See also In re Resorts Int'l, Inc.,* 372 F.3d 154, 168–69 (3d Cir. 2004) (setting forth more restrictive "close nexus" test for post-confirmation related-to jurisdiction).

[59] *See Pacor*, 743 F.2d at 955; *In re Federal–Mogul Global, Inc.,* 300 F.3d 368, 381 (3d Cir. 2002); *In re Combustion Engineering, Inc.,* 391 F.3d 190, 227 (3d Cir. 2004).

24

establish a conceivable effect on the bankruptcy estate. The Removed Action is accordingly within this Court's subject-matter jurisdiction under 28 U.S.C. § 1334(b).

## B.    The Removed Action is not subject to mandatory abstention.

In certain circumstances, cases that fall within § 1334(b)'s grant of subject-matter jurisdiction are nevertheless subject to "mandatory abstention" under § 1334(c)(2). Here, the question of abstention was briefed by the parties to the District Court in the Northern District of Ohio. But that Court transferred the matter to Delaware, and the Delaware District Court referred the matter to this Court, without ruling on these issues. In the agenda filed in connection with the April 6, 2026 hearing, the parties identify the briefs filed in the District Court for the Northern District of Ohio as the relevant materials on which this Court should base its ruling on the motion. No party raised any objection to having the Court proceed on this basis during the April 6, 2026 hearing. So with the apparent consent of the parties, this Court is comfortable ruling on that basis.

Section 1334(c)(2) provides that:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.[60]

---

[60] 28 U.S.C. § 1334(c)(2).

As counsel to certain of the former officers pointed out during the April 6 argument, the vendors have failed to meet their burden of coming forward with evidence showing that the case could be timely adjudicated in the Ohio state court. Judge Shannon's opinion in *SemCrude* explains that the party moving for mandatory abstention has the burden of demonstrating each of the statutory elements.[61]    In *SemCrude*, the court denied the abstention motion because the moving parties "[had] not carried their burden to show that these actions can be timely adjudicated in state court."[62]    In so holding, the court emphasized that "a naked assertion that the matter can be timely adjudicated in the state court, without more[,] is insufficient to satisfy this requirement."[63]    The court emphasized that the moving party "must present evidence to show that a state court action can be timely adjudicated."[64]

The same is true of the vendors here.    This is not intended in any way as a criticism of the state courts in Ohio.    Under the presumption of regularity and principles of comity, this Court would ordinarily presume that a court of competent jurisdiction would act in a timely manner absent evidence to the contrary.    But *SemCrude* and the cases on which it relied all emphasize that this element of mandatory abstention is a factual question on which the party seeking abstention has

---

[61] *In re SemCrude, L.P.*, 442 B.R. 258, 274 (Bankr. D. Del. 2010) ("A party moving for mandatory abstention must meet all the requirements of mandatory abstention for relief to be granted.") (internal quotation and citation omitted).

[62] *Id.*

[63] *Id.* (internal quotation, citation, and brackets omitted).

[64] *Id.*

26

the burden of coming forward with evidence.  The vendors here have presented none and therefore have failed to meet their burden.[65]

## C.    The Court will deny the motions for permissive abstention and equitable remand.

The vendors also sought, as an alternative to remand for lack of jurisdiction, equitable remand under 28 U.S.C. § 1452(b), which permits remand on "any equitable ground."[66]  In that same pleading, as well as in the Northern District of Ohio, the vendors moved for permissive abstention under 28 U.S.C. § 1334(c)(1).  The court's

---

[65] It bears note that in their briefing in Ohio, certain of the former officers relied on the decision in *In re Longview Power*, 516, B.R. 282, 295 (Bankr. D. Del. 2014), which held that, in light of the requirement that the state court action "is commenced … in a State forum of appropriate jurisdiction," mandatory abstention only applies if the state court case was filed before the bankruptcy case was filed.  Several years thereafter, however, Judge Shannon (the author of the decision in *Longview Power*) concluded that *Longview Power* was inconsistent with the Third Circuit's holding in *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006).  *See In re Gen. Wireless Operations Inc.,* No. 17-10506 (BLS), 2017 WL 6033562, at *4 (Bankr. D. Del. Dec. 1, 2017).  As Judge Shannon noted in *General Wireless*, *Stoe* does not directly contradict the conclusion in *Longview Power*.  *General Wireless*, 2017 WL 6033562, at *4 ("The Third Circuit in *Stoe* did not directly address whether actions commenced post-petition satisfy [the 'is commenced'] prong.").  Rather, *Stoe* is addressed to the question whether it is implicit in the nature of abstention that there be some other state court proceeding that remains pending and in favor of which the federal court may abstain.  Because removal operates to take the removed case out of federal court, the question in *Stoe* was whether mandatory abstention is inapplicable in removed cases.  The Third Circuit rejected that argument.  But in doing so, this Court does not believe the Third Circuit answered the *timing* question raised by *Longview Power*, which asks at what point in time must the state law action be "commenced" under § 1334(c)(2).

The Court further notes, however, that the Judge Noreika of the District Court for the District of Delaware has persuasively concluded that, in view of the fact that § 1334(c) by its terms says nothing about *when* the state action must have been commenced, the "is commenced" language does not require that the state court action have been commenced before the petition date.  *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, No. CV 18-1650 (MN), 2019 WL 3431107, at *6 (D. Del. July 30, 2019) ("the Court is persuaded by the courts that have refused to read limitations into § 1334(c)(2) that are not apparent from a plain reading of the statute").  Because, however, the vendors have failed to meet their burden with respect to the timely adjudication requirement, the Court need not reach this issue in order to find that mandatory abstention is inapplicable here.

[66] *See* RA D.I. 7.

27

decision in *In re Trans World Airlines* recites 13 factors courts consider in deciding motions for permissive abstention.[67]  As with most tests with that many factors, the ultimate analysis boils down to a commonsense judgment about whether under all of the circumstances of the case, it makes sense for the court to abstain.  Similarly, the district court opinion in *LJM2 Co-Investment* identifies eight factors courts consider when asked to remand on equitable grounds.  These eight factors are largely overlapping with the 13 factors considered on motions for permissive abstention.[68]

The Court will spare the reader a discussion of each of these factors.  Here, the circumstances of the case persuade this Court that it is sensible for it to retain jurisdiction.  The lawsuit is obviously related to the bankruptcy case.  At bottom, the vendors are suing the former officers to collect on debts that were owed to them by the debtors.  Their claims against the debtors are addressed in the confirmed plan.

---

[67] *In re Trans World Airlines, Inc.*, 278 B.R. 42, 52 (Bankr. D. Del. 2002).  The thirteen factors are: " (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which the issue of state law predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the presence in the proceeding of non-debtor parties; (12) the existence of the right to a jury trial; and (13) prejudice to the involuntarily removed defendants." *Id.*

[68] *LJM2 Co-Investment, L.P. v. LJM2 Capital Management, L.P.*, No. 02-1498, 2003 WL 431684, at *5 (D. Del. Feb. 24, 2003).  The eight factors are: "(1) *forum non conveniens;* (2) a holding that, if the civil action has been bifurcated by removal, the entire action should be tried in the same court; (3) a holding that a state court is better able to respond to questions involving state law; (4) expertise of the particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity considerations; and (8) a lessened possibility of an inconsistent result." *Id.*

For the reasons described above, this Court has rejected the former officers' argument that the claims are barred by the sale order.  But that conclusion depends on the fact that, to find the former officers liable on a theory of common law fraud, the court hearing the Removed Action will be required to make a specific factual finding that each plaintiff individually relied on a false statement made by a former officer.  This Court has no doubt that the state court in Ohio is more than capable of doing exactly that.  At the same time, there is a clear relationship between the adjudication of the claim asserted in the Removed Action and the terms of this Court's sale order.  In view of that relationship, this Court believes it appropriate for it to retain jurisdiction over the Removed Action.

## IV.    The motion to stay consideration of the Removed Action is denied as moot.

Finally, the vendors asked the Delaware District Court to stay consideration of the Removed Action pending resolution of the Enforcement Action.  The district court found that this Court was better situated to decide that question.[69]  For the reasons set forth above, the Court has denied the vendors' motion for judgment on the pleadings in the Enforcement Action.  The Court does not believe that leaves anything left to be decided in the Enforcement Action.  The Court will accordingly deny the motion to stay as moot.

---

[69] *Advantus Corp. v. Prendergast,* No. 1:25-cv-01132, D.I. 43 at 3.

## Conclusion

For the foregoing reasons, the Wind-Down Debtors' motion for judgment on the pleadings will be denied; the vendors' motion to dismiss for lack of subject-matter jurisdiction will be denied; the former officers' motion to strike the vendors' joinder in the Wind-Down Debtors' motion for judgment on the pleadings will be denied; the vendors' motion to remand will be denied; the vendors' motion for abstention will be denied; and the vendors' motion for a stay pending resolution of the Enforcement Action will be denied as moot. The parties are directed to settle appropriate orders consistent with this decision. To the extent these rulings resolve all issues in the Enforcement Action such that it is appropriate for that action to be dismissed, the orders should so state.

Dated: June 11, 2026

CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE